UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ELAINE BONIN and AMY VEGA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>STATE COLLECTION SERVICE INC.,<br><br>Defendant. | Case No.: 17-cv-1646<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

# JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 133, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

# PARTIES

3. Plaintiff Elaine Bonin is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Amy Vega is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family or household purposes.

6. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

7. Defendant State Collection Service Inc. ("SCS") is a domestic business corporation with its principal place of business located at 2509 South Stoughton Road, Madison, Wisconsin 53716.

8. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. SCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. SCS is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Bonin's October 22, 2014 Medical Services*

10. On or about June 16, 2016, SCS mailed a debt collection letter to Bonin regarding an alleged debt that was allegedly owed to "AURORA ST LUKES MEDICAL CENTER" ("Aurora"). A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt in Exhibit A was incurred for personal, family or household purposes, namely medical services.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter, used by SCS to attempt to collect alleged debts.

2

14. Upon information and belief, Exhibit A was the first written communication Bonin received from SCS regarding the alleged debt incurred for medical services on October 22, 2014.

15. Exhibit A contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to provide along with their initial communications:

**\*\*IMPORTANT CONSUMER NOTICE\*\***

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

16. Exhibit A also contains the following:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| AURORA ST LUKES MEDICAL CENTER | 33601- | 10/22/14 | $143.90 |
| AURORA ST LUKES MEDICAL CENTER | 80620- | 03/20/15 | $1909.05 |
| AURORA ST LUKES MEDICAL CENTER | 18538- | 05/12/15 | $510.85 |
| | | Total Amount Due: | $2,563.80 |

Exhibit A.

17. Exhibit A states that Bonin incurred an alleged debt of $143.90 for medical services provided on October 22, 2014, with "Client Acct #" ending in 33601.

18. On or about January 13, 2017, SCS mailed a debt collection letter to Bonin regarding the same alleged debt that was allegedly owed to "AURORA ST LUKES MEDICAL CENTER" ("Aurora"). A copy of this letter is attached to this complaint as Exhibit B.

19. Upon information and belief, the alleged debt in Exhibit B was incurred for personal, family or household purposes, namely medical services.

20. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Bonin inserted by computer.

3

21. Upon information and belief, Exhibit B is a form debt collection letter, used by SCS to attempt to collect alleged debts.

22. Exhibit B contains the following:

```
Account #: 40252140

Creditor                                  Client Acct #    Service Date    Account Balance
AURORA ST LUKES MEDICAL CENTER            33601-           10/22/14        $136.53
AURORA ST LUKES MEDICAL CENTER            30620-           03/20/15        $1909.05
AURORA ST LUKES MEDICAL CENTER            18538-           05/12/15        $510.85
AURORA ST LUKES MEDICAL CENTER            34698-           06/10/16        $2849.82
AURORA MEDICAL GROUP FRANKLIN CLINIC      09993-           06/29/16        $15.00
LAKESHORE MED CLINIC S MILW CHICAGO AV    23199-           06/13/16        $15.00
                                                        Total Amount Due:  $5,436.25
```

Exhibit B.

23. Exhibit B states that Bonin incurred an alleged debt of $136.53 for medical services provided on October 22, 2014, with "Client Acct #" ending in 33601.

24. Upon information and belief, Exhibits A and B are collecting the same debt. Both letters are collecting on an account for which the Service Date and Client Account Numbers match.

25. Exhibit A states that the "Account Balance" for the alleged debt with Client Account Number ending in 33601 that was allegedly incurred for medical services provided on October 22, 2014 was $143.90.

26. Exhibit B states that the "Account Balance" for the alleged debt with Client Account Number ending in 33601 that was allegedly incurred for medical services provided on October 22, 2014 was $136.53.

27. Bonin did not make any payment to SCS or Aurora on this account.

28. Bonin was confused by the different account balances for what was apparently the same debt.

29. The unsophisticated consumer would be confused and misled by the different account balances for what was apparently the same debt.

4

### Facts Relating to Bonin's June 13, 2016 and June 29, 2016 Medical Services

30. On or about December 9, 2016, SCS mailed a debt collection letter to Bonin regarding alleged debts that were allegedly owed to "AURORA MEDICAL GROUP FRANKLIN CLINIC" and "LAKESHORE MED CLINIC S MILW CHICAGO AV" (collectively, "Aurora"). A copy of this letter is attached to this complaint as Exhibit C.

31. Upon information and belief, the alleged debts in Exhibit C were incurred for personal, family or household purposes, namely medical services.

32. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Bonin inserted by computer.

33. Upon information and belief, Exhibit C is a form debt collection letter, used by SCS to attempt to collect alleged debts.

34. Upon information and belief, Exhibit C was the first written communication Bonin received from SCS regarding the alleged debts incurred for medical services provided on June 13, 2016 and June 29, 2016.

35. Exhibit C contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to provide along with their initial communications:

**\*\*IMPORTANT CONSUMER NOTICE\*\***
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

36. Exhibit C contains the following:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| AURORA MEDICAL GROUP FRANKLIN CLINIC | 09993-▮ | 06/29/16 | $15.00 |
| LAKESHORE MED CLINIC S MILW CHICAGO AV | 23199-▮ | 06/13/16 | $15.00 |
| | | Total Amount Due: | $ 30.00 |

Exhibit C.

37. Exhibit C states that Bonin owed two separate debts to Aurora.

5

38. The debt with Client Account Number ending in 09993 was allegedly incurred for medical services provided on June 29, 2016 and had an account balance of $15.00.

39. The debt with Client Account Number ending in 23199 was allegedly incurred for medical services provided on June 13, 2016 and had an account balance of $15.00.

40. On or about December 13, 2016, SCS mailed a debt collection letter to Bonin regarding alleged debts that were allegedly owed to "AURORA ST LUKES MEDICAL CENTER," "AURORA MEDICAL GROUP FRANKLIN CLINIC," and "LAKESHORE MED CLINIC S MILW CHICAGO AV" (collectively, "Aurora"). A copy of this letter is attached to this complaint as Exhibit D.

41. Upon information and belief, the alleged debts in Exhibit D were incurred for personal, family or household purposes, namely medical services.

42. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Bonin inserted by computer.

43. Upon information and belief, Exhibit D is a form debt collection letter, used by SCS to attempt to collect alleged debts.

44. Exhibit D contains the following:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| AURORA ST LUKES MEDICAL CENTER | 33601- | 10/22/14 | $136.53 |
| AURORA ST LUKES MEDICAL CENTER | 30620- | 03/20/15 | $1909.05 |
| AURORA ST LUKES MEDICAL CENTER | 18538- | 05/12/15 | $510.85 |
| AURORA ST LUKES MEDICAL CENTER | 34698- | 06/10/16 | $2849.82 |
| AURORA MEDICAL GROUP FRANKLIN CLINIC | 09993- | 06/29/16 | $15.00 |
| LAKESHORE MED CLINIC S MILW CHICAGO AV | 23199- | 06/13/16 | $15.00 |

Total Amount Due: $5,436.25

Exhibit D.

45. Exhibit D also contains the following:

***** THIS BALANCE IS SERIOUSLY DELINQUENT *****
MAIL PAYMENT OR PHONE US TO DISCUSS TERMS

Exhibit D.

6

46. Upon information and belief, Exhibit D, dated just four days after Exhibit C, attempts to collect on the same debts as Exhibit C.

47. Bonin was confused by Exhibits C and D, unsure about whether the validation period had lapsed or whether she actually had the right to dispute a debt that was "SERIOUSLY DELINQUENT."

48. The unsophisticated consumer, receiving Exhibits C and D in rapid succession, would be confused and misled as to whether the validation period had lapsed or whether she would actually have the right to dispute a debt that was "SERIOUSLY DELINQUENT."

49. Bonin was confused by Exhibits A-D.

50. The unsophisticated consumer would be confused by Exhibits A-D.

51. Bonin had to spend time and money investigating Exhibits A-D, and the consequences of any potential responses to Exhibits A-D.

52. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-D.

### *Facts Relating to Plaintiff Vega*

53. On or about February 14, 2017, State Collection mailed a debt collection letter to Plaintiff Vega regarding an alleged debt, allegedly owed to "Aurora St Lukes Medical Center." ("Aurora"). A copy of this letter is attached to this complaint as Exhibit E.

54. The service date of the alleged Aurora debt is listed on Exhibit E as "04/19/10."

55. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Vega inserted by computer.

7

56. Upon information and belief, Exhibit E is a form debt collection letter used by State Collection to attempt to collect alleged debts.

57. Exhibit E is dated February 14, 2017.

58. State Collection mailed Exhibit E to Vega after the statute of limitations had run on the alleged debt.

59. The statute of limitations for actions on contracts in Wisconsin is six years. Wis. Stat. § 893.43; *Hennekens v. Hoerl*, 160 Wis. 2d 144, 159, n.12, 465 N.W.2d 812, 818 n.12 (1991) ("a creditor has six years to commence an action on a promissory note").

60. No one ever sued Vega to collect the alleged Aurora debt.

61. Vega has neither made a payment on the alleged debt, nor any promise to pay, after April 19, 2010.

62. State Collection mailed Exhibit E to Vega on or around February 14, 2017, after the six year statute of limitations had run.

63. Under Wisconsin law, the expiration of the statute of limitations extinguishes the debt. Wis. Stat. § 893.05 ("**Relation of statute of limitations to right and remedy.** When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy.").

64. Thus, attempts to collect a time-barred debt in Wisconsin are attempts to collect debts that no longer exist, in violation of the FDCPA. 15 U.S.C. § 1692e(2)(a); Wis. Stat. § 427.104(1)(j); *see also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable).

65. Any reasonable lender, debt buyer or debt collector would realize that the alleged debt was well-past the statute of limitations.

## THE FDCPA

66. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems

important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

67. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

68. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

69. 15 U.S.C. § 1692e(2)(A) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

70. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

71. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

72. 15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

73. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

74. 15 U.S.C. § 1692g states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added)

75. 15 U.S.C. § 1692g(b) mandates that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

11

76. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

77. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

78. <u>Exhibits A and/or B</u> misstate the amount of the debt on the date that the letter was sent to the consumer.

79. Misstatement of Plaintiff's debt is a *per se* violation of 15 U.S.C. § 1692g(a)(1). There is no materiality inquiry required where a debt collector fails to make a disclosure required under § 1692g. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 ("for good reason, we have not extended the implicit materiality requirement of § 1692e to reach claims under §1692g(a).").

12

80. Moreover, misstatement of Plaintiff's debt is a material false statement (*see Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)) because it misleads the unsophisticated consumer about the amount of the debt. 15 U.S.C. § 1692e(2)(a).

## THE WCA

81. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

82. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

83. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

84. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

85. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

13

86. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

87. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

88. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

89. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

90. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

91. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

14

92. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

**COUNT I – FDCPA**

93. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

94. Count I is brought on behalf of Plaintiff Bonin.

95. Exhibits A and B state different balances for the same debt.

96. The unsophisticated consumer would be misled and confused as to the actual balance of the debt.

97. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

**COUNT II – FDCPA**

98. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99. Count II is brought on behalf of Plaintiff Bonin.

100. Exhibit D was sent just four days after Exhibit C, even though Exhibit C disclosed the 30-day validation period for two of the debts Exhibit D attempted to collect by informing Plaintiff that the debt was "SERIOUSLY DELINQUENT."

101. The unsophisticated consumer would be misled and confused as to whether the statutory validation period had lapsed or whether she could actually validate a debt that was "SERIOUSLY DELINQUENT."

102. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692g(b).

15

## COUNT III – FDCPA

103. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104. Count III is brought on behalf of Plaintiff Vega.

105. State Collection attempted to collect Vega's alleged debt after the statute of limitations had run.

106. The expiration of the statute of limitations extinguished the debt. Wis. Stat. § 893.05.

107. Exhibit E attempts to collect a debt that does not exist. *See Pantoja v. Portfolio Recovery Associates*, 852 F.3d 679, 684 (7th Cir. 2017).

108. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

## COUNT IV – WCA

109. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

110. Count IV is brought on behalf of Plaintiff Bonin.

111. Exhibits A and B state different balances for the same debt.

112. If the balance stated in Exhibit A is correct, Defendant or the creditor could continue to attempt to collect on the debt even if Plaintiff paid the amount stated in Exhibit B.

113. If the balance stated in Exhibit B is correct, Defendant attempted to collect a balance that was not owed.

114. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT V – WCA

115. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

116. Count V is brought on behalf of Plaintiff Bonin.

117. Exhibit D was sent just four days after Exhibit C, even though Exhibit C disclosed the 30-day validation period for two of the debts Exhibit D attempted to collect by informing Plaintiff that the debt was "SERIOUSLY DELINQUENT."

118. The unsophisticated consumer would be misled and confused as to whether the statutory validation period had lapsed or whether she could actually validate a debt that was "SERIOUSLY DELINQUENT."

119. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT VI – WCA

120. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

121. Count VI is brought on behalf of Plaintiff Vega.

122. Exhibit E attempts to collect a debt that is time-barred and thus extinguished as a matter of law. Wis. Stat. §§ 893.43, 893.05.

123. Exhibit E attempts to enforce a right to a debt, even though Defendant knew or should have had reason to know that no such right existed at the time the letters were sent.

124. Defendant violated Wis. Stat. §§ 427.104(1)(h) and 427.104(1)(j).

125. Plaintiff further seeks injunctive relief under the WCA, Wis. Stat. § 426.109(1).

## CLASS ALLEGATIONS

126. Plaintiff brings this action on behalf of three Classes.

127. Class I ("Inconsistent Balance Class"), consists of (a) all natural persons in the State of Wisconsin (b) to whom defendant SCS sent collection letters in the form of <u>Exhibits A and B</u> to the Complaint in this Action, (c) stating different balances in the letters, (d) seeking to collect one or more debts incurred for personal, family or household services, (e) between November 28, 2016 and November 28, 2017, inclusive, (f) that was not returned by the postal service. Plaintiff Bonin is the designated representative for Class I.

128. Class II ("Overshadowing Class"), consists of (a) all natural persons in the State of Wisconsin (b) to whom defendant SCS sent collection letters in the form of <u>Exhibits C and D</u> to the Complaint in this Action, (c) where the second letter attempts to collect on a debt during the 30-day validation period, (d) seeking to collect one or more debts incurred for personal, family or household services, (e) between November 28, 2016 and November 28, 2017 (f) that was not returned by the postal service.

129. Class III ("Limitations Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the forms represented by <u>Exhibit E</u> to the complaint in this action, (c) incurred for personal, family or household purposes, (e) after the six year statute of limitations had expired (d) between November 28, 2016 and November 28, 2017, inclusive, (e) that was not returned by the postal service. Excluded from the class are any person who Defendant can show made one or more payments on the account after November 17, 2011, and any person against whom the creditor or State Collection has obtained a court judgment ordering the person to pay the account.

130. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

131. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A-E</u> violate the FDCPA and WCA.

132. Plaintiffs' claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

133. Plaintiffs will fairly and adequately represent the interests of the members of each Class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

134. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## <u>JURY DEMAND</u>

135. Plaintiffs hereby demand a trial by jury.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 28, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

20